HARRY JOHNSON ET AL. *v.* MITCHELL SUPPLY, INC.

[No. 1369, September Term, 1975.]

*Decided September 22, 1976.*

The cause was argued before THOMPSON, MOYLAN and MENCHINE, JJ.

*Thomas F. Santer*, with whom were *Ashcraft, Gerel & Koonz* on the brief, for appellants.

*John E. Sandbower, III,* with whom were *Michael A. Pretl* and *Smith, Somerville & Case* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Rodney Johnson, then aged 9$^{1}$/$_{2}$ years, suffered a broken leg when struck by sheetrock wallboards falling from a stack that had been put in place by employees of Mitchell Supply, Inc. (appellee).

Harry Johnson and Dorothy Johnson, individually and as parents of Rodney Johnson (appellants), entered suit in the Circuit Court for Charles County against appellee, claiming that the injury to their son was caused by the negligence of its employees. Removed to the Circuit Court for Calvert County, in due course the case was tried before a jury in that court. The jury's verdict was for the defendant.

From that judgment thereafter extended, the Johnsons have appealed, contending that the instruction of the trial judge with respect to the issue of contributory negligence was erroneous.

Appellee defends the instruction but contends that in any case (a) no evidence of primary negligence was shown and (b) Rodney Johnson was guilty of contributory negligence as a matter of law. Thus, appellee argues, its motion for a directed verdict should have been granted as a matter of law so that even if the instruction was erroneous, the error was harmless because appellants in any case were not entitled to recover. We agree that if that contention is sound, it would be unnecessary to address the alleged instructional error. Where an unsuccessful litigant is not entitled to recover in any event, no prejudice arises from a faulty instruction. *White v. Bramble,* 124 Md. 395, 402.

In passing to consideration whether issues of negligence or contributory negligence may be determined as a matter of law, we "must assume the truth of all credible evidence on [those issues] and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made . . . ." *Newton v. Spence,* 20 Md. App. 126, 134, 316 A. 2d 837, 842 (1974). We shall examine the record in that light.

Rodney's parents had contracted with one Joe Pickeral for the addition of a living room, bedroom, bathroom and basement to their existing dwelling in Charles County, Maryland. The family continued to reside in the dwelling during the construction. The new addition was about 80% complete on February 14, 1974. Charles Henry Washington, an employee of the appellee, assisted by another, made a delivery of 30 bundles of sheetrock wallboards (2 to a bundle) to the construction site of the addition. Each individual board was 4' x 12' x ½".

The boards had been trucked to the site in two "ricks" of 15 bundles bound together by tape. The "ricks" were individually lifted by a boom on the truck to window level. The tapes on the "ricks" were removed at that point and the bundles individually brought within the dwelling and stacked as hereafter described. The bundles never were re-taped into "ricks." The two sets of 15 bundles were stacked edgewise on the plywood subflooring, resting against two by four studs of two separate walls. The placement was made in such a way that the boards bisected the several floor joists rather than paralleling them in order to distribute the great weight of the material.

John Digges Mitchell of the appellee corporation gave the following testimony:

"Q Is there a custom within the building supply trade as to the manner in which drywall is to be stacked on a residential job site such as the one involved in this case?

A There very definitely is.

Q What is that custom?

A The custom is that it be stacked in an upright position leaning against a stud wall or a wall in the room or one of the extremity walls but never laid flat. The weight involved in this product is just too much to stand the average load of floor joist system. The only time it is laid flat is the case of a concrete slab such as a

garage or grade recreation room where it's
concrete but ever [sic] on a wooden floor."

The bundles were not tied to the studding in any way.
Washington testified that the bundles could not be laid flat
down in the center of the room "because it would bow the
floor." The weight of an individual bundle is not shown in
the record.

Washington gave differing estimates of the distance
between the wall studding and the bottom of the stacked
wallboards, his testimony showing a variation from three to
eight inches. On the other hand, Rodney had described the
bundles as "standing straight up and down."

Washington knew that the Johnson family continued to re-
side in the home during the construction of the addition and
knew that young children were included within the family
unit.

Delivery was accomplished between 8:30 and 9:30 A.M. on
February 14, 1974 at a time when no member of the Johnson
family was at home. At about 3 P.M. on that date, when
Rodney returned from school, he was told by his mother to
"go out to the addition and sweep up the insulation that the
dog scattered all over."

Rodney thus described the events leading up to his injury:

"Q What did you do then when you went into the
room to sweep up the insulation? Do you recall
what you did first?

A Yes, sir.

Q What was that?

A I went in and went for the biggest piece of
insulation first.

Q Where was this?

A In front of the sheetrock.

Q What did you do with it?

A I went over there and started to sweep it up but I
bent over so I could sweep it up and my rear
end bumped against the sheetrock.

Q Which stack of sheetrock did your rear end bump against?

A When you come in the doorway the one to your left.

Q The one closest to the doorway?

A Yes, sir.

Q What happened then after you bent over and your rear end bumped the sheetrock?

A I turned around to see what I hit because I didn't know whether it was going to fall or not. When I turned around it was falling and I caught one sheet almost and I was falling back and then the rest of it started coming down.

\* \* \*

Q Rodney, when you fell, how did you fall?

A On my back.

Q After you fell where was the sheetrock?

A On top of me.

Q Do you know how much sheetrock was on top of you?

A No, sir.

Q What did you do then?

A I screamed.

Q Do you remember what you screamed or said?

A No, sir.

Q What do you remember happening then?

A My mother and brother running into the room.

Q Which brother?

A The oldest boy."

The mother of the boy thus described her observations and course of action when she responded to her son's screams:

"Q When you got to the bedroom area, what, if anything, did you observe?

A Rodney was lying on the floor screaming with the sheetrock on top of him.

Q  Do you recall approximately how many packages of sheetrock was on Rodney?

A  About six, maybe more because I don't remember putting more than two or three on each side. I do remember that but I can't say exactly how many.

Q  After you observed Rodney on the floor, well, can you describe what manner the sheetrocks were lying on top of him? How was he positioned?

A  Lying back but he had his elbow, you know, like the hip holding the top part of his body up. We taken off the sheetrock. One leg was sort of out in this position, back, and one leg was out.

Q  What means did you use to get the sheetrock off of him?

A  First my oldest son and I tried lifting it all at once. We couldn't. I told him to go get something to pry it up. We tried prising [sic] it all up at once. We still couldn't. So we had to take one pack at a time.

Q  As you lifted the packs, what did you do with them?

A  Stand some on the opposite side of the room. There was two packs remaining, some to the left and some to the right against what was remaining standing.

Q  Did you finally get all of the packages off Rodney?

A  Yes, I did."

The following testimony by the mother serves to aid understanding of the manner in which the material fell upon her son:

"FOREMAN OF THE JURY: We would like to know if the sheetrock fell forward on top of the boy or fell from underneath him. How did it fall on him?

JUDGE BOWEN: I think I see the question you have. Mrs. Johnson, let's assume that this is the wall, the studding and partition. Here is the sheetrock leaning up against the wall. The jury would like to know whether the sheetrock fell this way with him out here or whether it slid out that way?

THE WITNESS: From the way it was lying on him the bottom part was back, it came top first toward him, from the top over.

JUDGE BOWEN: When you got there, let's say this is your son, when you got there he was down like this with some of the sheetrock catching him from where?

THE WITNESS: From here down.

JUDGE BOWEN: About a little above his belt line down was under the sheetrock?

THE WITNESS: Yes, sir.

JUDGE BOWEN: Some was on top of him and some was still standing?

THE WITNESS: Yes, sir."

### Negligence

We are persuaded that the evidence created a jury issue as to primary negligence. The great weight of the material, coupled with its bulk, combined to create a potential danger to persons approaching it, unless ordinary care was exercised in connection with its stacking.

In the subject case the evidence would admit of a finding that the heavy boards had been stacked so slightly removed from the perpendicular as to form a kind of Sword of Damocles, awaiting but an insignificant touch to bring about their crashing, cascading descent.

### Contributory Negligence

We are persuaded also that the issue as to contributory negligence was for the jury.

Rodney Johnson was but nine years of age at the time of his injury and was charged only with the exercise of that degree of care reasonably to be expected of one of such tender age. *State, use of Taylor v. Barlly*, 216 Md. 94, 102, 140 A. 2d 173, 177 (1958).

He did not know what sheetrock was or how much it weighed. Although the record shows that he was conscious that the stacked material possibly might fall if struck, it does not appear that he was aware that its fall could injure him. He testified that he consciously attempted to avoid hitting the sheetrock by facing away from it while sweeping up the debris upon the floor. Despite that attempt, he did bump his "rear end" against the material.

A trier of facts, measuring such a bump by a nine year old against the bulk and weight of the material could conclude that it was inconsequential. We cannot say, as a matter of law, in the circumstances of this case, that this inadvertent bumping of the boards was an act of contributory negligence barring recovery. *Hooper v. Mougin*, 263 Md. 630, 634, 284 A. 2d 236, 239 (1971).

## The Instructions

The trial court's instructions to the jury as to contributory negligence were as follows:

"... there is another principle of law involved and that is in this state contributory negligence in any degree whatsoever is a complete bar to recovery. On this aspect of the matter all of the plaintiffs, father and mother as well as young Rodney, rise or fall on whether or not young Rodney was guilty of contributory negligence. You will understand, ladies and gentlemen, that when you start to decide what is or is not contributory negligence that all persons are required to exercise due care for their own safety. Regardless of how dangerous a situation someone else may have created, you may not when you see that it is there go blundering into it and then say that the person

creating it should pay if you yourself did not take the proper steps for your own safety. So that if you fail to take or exercise due care for your own safety, you are guilty of contributory negligence, and *if you are guilty of contributory negligence in any degree, no matter how slight, in this state you cannot recover. It doesn't matter if the defendant is ninety-nine percent negligent and you are one percent. If you are negligent in any degree as a plaintiff you cannot recover in this state.*

"One further corollary. Just as we took Mr. Washington as a truck driver and delivery man with thirteen years experience and determined whether what he did met the standard of care in his end of the matter, so with young Rodney. Rodney is beyond the age where he can as a matter of law be said not to be able to be contributorily negligent. There comes a time as you go down the age bracket until you get to be an age where below that a child can't be contributorily negligent. Just doesn't have sufficient power as you get into younger children to appreciate danger to themselves. You can understand that.

"Now Rodney is past that age but he is something less than a mature adult too. So in determining whether he was guilty of contributory negligence you test his actions by what you believe an ordinary reasonable and prudent child of his years at the time this occurred would be required to know and understand with respect to his obligation to exercise due care for his own safety.

"You have the benefit of some testimony as to what he did think and what he did do and you can use that in arriving at your decision as to whether or not you find he was contributorily negligent, and if you find he was, that ends your deliberations because none of the plaintiffs can recover if he is contributorily negligent. At that point your verdict would be for the defendant also even

though you may have found that the defendant was guilty of some negligence in the delivery of the material." (Italics supplied.)

The appellant attacks the italicized portion of the charge.

The propriety and prejudicial effect of instructions referring to the degree or percentage of contributory negligence necessary to bar recovery is the subject of an extensive note in 87 A.L.R.2d 1391 *et seq.* The majority rule is thus stated in the annotation at pages 1398 and 1399:

> "[a] Generally.
>
> The decided weight of authority tends to the view that contributory negligence is not susceptible of division into degrees or percentages, and that an instruction importing such division or inviting a comparison of the relative amount of negligence attributable to the parties to the action is erroneous."

The rationale for the rule clearly emerges in quotations from the following cases:

*Yeary v. Holbrook,* 198 S. E. 441, 450 (Va. 1938)

> "Negligence and contributory negligence are not essentially different. The one is the failure of defendant to use ordinary care for the safety of another; the other is the failure of plaintiff to use ordinary care for his own safety. If a combination of the two failures caused, or contributed to, or concurred in producing the injury, neither of the two failures can be made the basis of recovery. In an ordinary tort action, no instruction should contain a statement, that if the jury believes the defendant was negligent in the slightest degree, plaintiff should be entitled to recover. Then why should the jury be instructed that plaintiff's negligence in the slightest degree would bar his recovery? The law imposes the same degree of care in such cases upon both plaintiff and defendant, but

if one is more negligent than the other the law will not undertake to balance the negligence of the respective parties for the purpose of determining which was more in fault."

*Busch v. Lilly,* 101 N.W.2d 199, 200 (Minn. 1960) ". . . The court then instructed:

'The law in this state says that if you are guilty of, let's say, five per cent negligence in a case you can not recover. That is the law in this state, putting it on a percentage basis.'

"This court has repeatedly stated that no reference should be made in a jury charge to a comparative degree or percentage of negligence or contributory negligence.

"As early as Craig v. Benedictine Sisters Hospital Ass'n., 88 Minn. 535, 93 N.W. 669, we held that it was erroneous to instruct that if plaintiff's intestate was negligent in any degree — even the slightest degree — and his negligence contributed in the slightest degree to his death, the plaintiff could not recover.

"Again, in Roach v. Roth, 156 Minn. 107, 111, 194 N.W. 322, 324, this court said that in a personal injury action want of ordinary care is the test of contributory negligence and that a charge which refers to negligence 'in any degree whatsoever' is objectionable, and more so when it refers to negligence in the slightest degree. See, also, Mockler v. City of Stillwater, 246 Minn. 39, 74 N.W.2d 118.

"In Frank v. Stiegler, 250 Minn. 447, 454, 84 N.W.2d 912, 918, an instruction was given with reference to concurrent negligence which stated: 'All that is necessary here is that the combination, even if it is ninety-nine on one side and one on the other side, if the combination is negligence and that negligence is the proximate cause of this injury, * * * then you would find in favor of the plaintiff

and against all of the defendants.' This was held to be error in that it permitted the jury to find the defendant liable for the slightest degree of negligence.

"Any reference to percentage of negligence or contributory negligence is improper in a charge to a jury."

*Iwrey v. Fowler*, 116 N.W.2d 722, 725 (Mich. 1962)

"Complaint is also made with reference to the following statement in the charge, likewise bearing on the question as to the contributory negligence of Mrs. Iwrey:

'Under our law it does not make any difference if the defendant is 99.9 per cent guilty of negligence, if the plaintiff driver is 1/10th of 1 per cent, or in any way guilty of negligence that contributed to the accident she can not recover.'

It is insisted that said statement might have been interpreted by the jurors as barring recovery on the basis of negligence so slight as to be immaterial, or possibly on a finding of remote lack of due care as distinguished from negligence proximately contributing to the accident. That the instruction might have been so construed is possible. The specific reference to stated percentages might well have been confusing."

*Driscoll v. Errequible*, 482 P. 2d 291, 293 (Nevada 1971)

"The use of the phrase 'however slight' in instructing the jury with regard to contributory negligence is generally condemned. Annot. Propriety and Prejudicial Effect of Instructions Referring to the Degree or Percentage of Contributory Negligence Necessary to Bar Recovery, 87 A.L.R.2d 1391 (1963); W. Prosser, Law of Torts, § 64 (3d ed. 1964). We agree that this type of instruction is improper.

"Whether the phrase refers to the degree of

causality, or the degree of negligence, its use is equally offensive. If the phrase refers to the degree of causality, as it seems to here, the jury may be misled to believing recovery is barred even where the negligence of the plaintiff contributed to his injuries only in a remote manner. This is not the law in Nevada. Cox v. L. A. & S. L. Railroad Company, 56 Nev. 472, 487, 56 P.2d 149 (1936). 'The law recognizes a difference between proximate cause and remote cause; and in defining contributory negligence excludes the idea of a "remote", "indirect" or "insignificant" causal connection between the negligence and the injury.' Huey v. Milligan, 242 Ind. 93, 175 N.E.2d 698, 704 (1961).

"If the phrase refers to the degree of negligence, the jury may be led to believe that the slightest want of care will bar recovery. This, too, is not the law. Negligence is failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise. Rocky Mountain Produce Trucking Co. v. Johnson, 78 Nev. 44, 51, 369 P.2d 198 (1962). The standard of care is that of the ordinary prudent man, not that of extraordinarily prudent man. W. Prosser, supra, § 32. See also Iwrey v. Fowler, 367 Mich. 311, 116 N.W.2d 722 (1962), and Craig v. Benedictine Sisters Hospital Ass'n., 88 Minn. 535, 93 N.W. 669 (1903)."

To the same effect are: Devine v. Cook, 279 P. 2d 1073 (Utah 1955); Mitchell v. Knight, 394 P. 2d 892 (Alaska 1964); Clark v. State, 222 P. 2d 300 (Dist. Court of Appeals, 3d Dist., Calif. 1950); Jerolman v. Chicago G. W. Ry. Co., 78 N. W. 855 (Iowa 1899); Hires v. Letts Melick Grocery Co., 296 S. W. 408 (Mo. 1927).

The precise question has never been answered by an appellate decision in this State. There are, however, clear signs that Maryland is to be found on the side of the majority view.

In *Gordon v. Chait*, 158 Md. 202, 148 A. 232 (1930), wherein a jury had rendered a verdict in favor of the plaintiff, the defendant appealed upon the ground that the trial court erroneously had deleted the parenthesized words in the following prayer: "that if they shall believe that the plaintiff contributed to his own injury by any failure (however slight) to exercise that degree of care and caution for his own safety which prudent persons ordinarily exercise under similar circumstances, then their verdict shall be for the defendants." (at page 204 [233]) In rejecting the defendant's contention, the Court said at page 205 [233]:

> *"These words, if inserted, would, we think, unnecessarily emphasize in the minds of the jury the question of the plaintiff's want of care and caution, and might thereby lead the jury to find wrongfully that the plaintiff was guilty of contributory negligence because of a want of care and caution greater than that required of him under the rule,* but in no event are these words necessary in a proper statement by the court of the law as to which the defendant was entitled to have the jury instructed." (Emphasis added.)

The precise issue was, however, present in *nisi prius* trial in the Circuit Court for Charles County entitled *Vest v. Pargas, Inc.* (No. 4888, 1969). In that case Judge J. Dudley Digges, now an associate judge of the Court of Appeals of Maryland, in an opinion explaining his grant of a new trial to the unsuccessful plaintiff, said:

> " 'During the course of the instructions to the jury in the above case, over the objection of the Plaintiffs, reference was made to possible contributory negligence on the part of the plaintiff. The jury was informed:
>
>> ". . . you are not concerned, with which one was greater at fault. That does not have anything to do with it at all. If both of them were at fault to any degree, the Plaintiff cannot recover, even though if you conclude that the

defendant was ninety-nine percent wrong, and the plaintiff was one percent, he cannot recover, because in order for you to conclude that he should be entitled to a verdict at your hands, you must conclude that the defendant was one hundred percent responsible for the accident, and the plaintiff was one hundred percent free of any fault."

" 'Although in earlier parts of the instruction concerning the defendant's negligence reference was made to the standard of care and proximate causation, the court is not convinced that these references corrected the wrong impression the jury might have received concerning the law of contributory negligence. It is not a question of the slightest degree of fault or one percent negligence barring recovery. The standard to be applied is whether the plaintiff failed to act as a reasonably prudent person under similar circumstances and whether that negligence contributed to the accident. Being one percent at fault or one hundred percent free from fault is not a proper equivalent of this standard.' "

In the subject case the language complained of appeared only in that part of the charge in which the trial court was declaring the rule of law for the determination of the contributory negligence of the nine year old plaintiff. No such language was used by the trial court in stating the rule of law for the determination of the primary negligence of the employees of the defendant.

Thus, it is possible — indeed likely — that the jury may have concluded that the rule of law governing determination of the existence of contributory negligence is different from and more stringent than the rule governing determination of the existence of primary negligence. The instruction was erroneous.

The secondary contentions of the appellee (1) that the Johnson youngster was a "bare licensee" as to whom no duty

was owed transcending the obligation to abstain from willful or wanton misconduct and entrapment and (2) that there was no relationship between the Johnson family and the appellee such as would create a duty to them are wholly without merit.

We reject the first because there is no evidential support for its premise.

We reject the second because it was reasonably foreseeable that members of the Johnson family, known to be continuing residents of the dwelling, would enter the construction area. They were not trespassers or mere licensees. Thus, the risk of harm to them would be increased by negligent action on the part of the appellee. In such circumstances, "the fact that [appellee was] acting under a contract or a gratuitous agreement with another, will not prevent his liability to [a] third person." Restatement, Torts, Second, § 324A, at 143.

*Judgment reversed.*
*Costs to be paid by appellee and case remanded for a new trial.*