**Paul P. HEINRICH and Eva Rae Heinrich, his wife**

v.

**The GOODYEAR TIRE AND RUBBER COMPANY, an Ohio Corporation.**

Civ. A. No. M–80–1956.

United States District Court,
D. Maryland.

Feb. 25, 1982.

Martin H. Freeman and Bulman, Dunie, Freeman, Burke & Feld, Bethesda, Md., and Sylvan H. Sack, Baltimore, Md., for plaintiffs.

Benjamin R. Civiletti and James K. Archibald and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The defendant, the Goodyear Tire and Rubber Company (Goodyear), has moved to dismiss certain aspects of the plaintiffs' amended complaint pursuant to Rule 12(b)(6) & (7), Fed.R.Civ.P.[1] The plaintiffs have filed a memorandum opposing Goodyear's motion,[2] and the court heard argument from counsel on February 5, 1982. For the reasons set out below, Goodyear's motion to dismiss will be denied.

The plaintiffs in this diversity case are an employee, and his spouse, of the Kelly-Springfield Tire Company (Kelly). Kelly is a wholly-owned subsidiary of Goodyear and, among other things, operates a tire manufacturing plant in Cumberland, Maryland. Plaintiff Paul P. Heinrich was first employed at Kelly's Cumberland plant in August of 1958.

The plaintiffs have sued only Goodyear in this court for damages in connection with the "occupational disease" contracted by plaintiff Paul P. Heinrich while working at Kelly's Cumberland plant. No effort has

---

1. Paper No. 82.    2. Paper No. 84.

been made to join Kelly as a party defendant.[3] The plaintiffs contend that they are not seeking to pierce Kelly's corporate veil, or otherwise hold Goodyear liable for Kelly's acts or omissions. In other words, all of the plaintiffs' legal theories are, as they must be, premised upon duties allegedly owed to the plaintiffs by Goodyear.

## I.

■ Count I of the amended complaint [4] sounds in negligence and is based on two separate theories of negligence liability. One theory, as set out in paragraphs 13 and 15 through 19 of Count I of the amended complaint, alleges *a failure by Goodyear to warn the plaintiffs of the dangers associated with the chemicals and other products Goodyear supplied to Kelly for use* at the Cumberland plant. Goodyear acknowledges that these paragraphs of the amended complaint state at least a "duty to warn" claim under Maryland law. *Moran v. Faberge*, 273 Md. 538, 543–53, 332 A.2d 11 (1975). *See Fischbach & Moore International Corp. v. Crane Barge R–14*, 632 F.2d 1123, 1127 (4th Cir. 1980); *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 858 (4th Cir. 1980).

## II.

Goodyear contends, however, that the plaintiffs' second negligence-based theory— *Goodyear's alleged undertaking to provide Kelly with health and safety information regarding all chemicals used* at the Cumberland plant—does not state a cognizable claim under Maryland law. The second theory is asserted in paragraphs 13 and 14 and in 17 through 19 of the amended complaint. In support of this assertion of denial of liability, Goodyear advances two general arguments, the second of which has several subparts.

Goodyear's first argument is that the plaintiffs are attempting to hold Goodyear liable in tort for Kelly's breach of its own duty to provide a safe workplace. *See Bauman v. Woodfield*, 244 Md. 207, 216, 223 A.2d 364 (1966). In other words, Goodyear asserts that it has no duty, as Kelly's corporate parent, either to perform Kelly's safe workplace duties or to see that Kelly performs such duties.

Goodyear's second argument challenges the "undertaking" theory advanced by the plaintiffs. Goodyear contends that when a parent corporation provides a subsidiary corporation with health and safety information, no duty of care arises therefrom as between the parent and the subsidiary's employees unless: (1) the parent assumes completely a duty owed by the subsidiary to the employees; or (2) the parent provides the health and safety information directly to the subsidiary's employees. As to this latter point, Goodyear maintains that no duty can arise when the subsidiary is the actual recipient of the information, and the parent has no right to control the subsidiary's use of the information. As a third aspect of its second main contention, Goodyear asserts that the allegations in the amended complaint do not allege an undertaking by Goodyear sufficient to create any duty of care as between itself and Kelly's employees.

In opposing Goodyear's motion, the plaintiffs contend that the allegations in Count I of the amended complaint state a claim for relief under the *Restatement (Second) of Torts* § 324A (1965), which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] [5] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

---

3. Kelly's joinder as a defendant would destroy complete diversity.

4. Paper No. 72. Count II is the loss of consortium count based on the same negligence theories as Count I.

5. The published text of § 324A uses the word "protect" rather than the word "perform." Such was apparently a typographical error. *Hill v. United States Fidelity & Guaranty Co.*, 428 F.2d 112, 115 n.5 (5th Cir. 1970).

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Goodyear does not contend that it is a statutory employer entitled to tort immunity under the Maryland Workmen's Compensation Act, *Md.Code Ann.* art. 101, §§ 1 to 102 (1979 & 1981 Cum.Supp.). To the contrary, Goodyear has maintained throughout this litigation that Kelly is a separate and distinct legal entity.[6]

In support of its first argument for dismissal, Goodyear relies on *Love v. Flour Mills of America*, 647 F.2d 1058 (10th Cir. 1981). In that case, employees injured in a grain elevator explosion sued the employer, the employer's parent corporation, and the employer's insurance carrier for negligently maintaining the grain elevator in an unsafe condition. The case was dismissed as to the employer and the insurance carrier on the ground that both were immune from negligence suits under Oklahoma's workmen's compensation law.[7] In affirming the District Court's dismissal order as to the parent corporation also, the Tenth Circuit panel stated:

"It is clear from the briefs and record that Chickasha's alleged negligent maintenance of the elevator is founded upon the fact that Chickasha owns other grain elevators or companies operating similar mills. Based on this experience, plaintiffs argue, Chickasha should have recognized the hazardous conditions at the Durant facility and should have caused Flour Mills to operate the facility in a safer manner."

\* \* \* \* \* \*

"Since the only tort alleged against Chickasha is that it failed to perform the employer's duty or to require the employer to perform its duty, the trial court properly dismissed the action."

647 F.2d at 1063.

This court has no quarrel with the result reached in the *Love* case. As will be seen below, however, the reasoning of *Love* is inapplicable to this case. The plaintiffs herein do not contend that Goodyear has an independent legal duty either to perform Kelly's employer duties or to see that such duties are performed by Kelly. Further, the plaintiffs have disclaimed any intention of attempting to impose tort liability on Goodyear for acts or omissions that are attributable solely to Kelly. Were it otherwise, the court might agree with Goodyear that under the reasoning of *Love v. Flour Mills of America*, 647 F.2d at 1063, the disputed aspect of Count I should be dismissed. As indicated above, however, the gist of the plaintiffs' second negligence theory is the application of the "Good Samaritan" rule set out in the *Restatement (Second) of Torts* § 324A (1965). Consequently, it must be determined: (1) whether section 324A would be accepted by the Court of Appeals of Maryland; and (2) if so, whether the allegations in the amended complaint state a claim for relief under section 324A.

Unlike other state appellate courts,[8] the Court of Appeals of Maryland has not specifically endorsed section 324A of the *Restatement (Second) of Torts*.[9] Two factors

**6.** Paper No. 65.

**7.** The same is true in Maryland when the employer complies with the provisions of the Act. *Md.Code Ann.* art. 101, § 15 (1979). *See Donohue v. Maryland Casualty Co.*, 363 F.2d 442 (4th Cir. 1966).

**8.** *See, e.g., United States Fidelity & Guaranty Co. v. Jones*, 356 So.2d 596, 597–98 (Ala.1978); *Huggins v. Aetna Cas. & Sur. Co.*, 264 S.E.2d 191, 192 (Ga.1980); *Pippin v. Chicago Housing Auth.*, 78 Ill.2d 204, 35 Ill.Dec. 530, 399 N.E.2d 596, 599–600 (Ill.1979); *Walsh v. Pagra Air Taxi, Inc.*, 282 N.W.2d 567, 570–71 (Minn. 1979); *American Mutual Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 48 Wis.2d 305, 310, 179 N.W.2d 864, 868 (Wisc.1970); *Quail Hollow East Condominium Ass'n v. Donald J. Scholz Co.*, 47 N.C.App. 518, 521–523, 268 S.E.2d 12, 15–16 (1980).

**9.** Section 324A was cited with approval by the Court of Special Appeals in *Johnson v. Mitchell Supply, Inc.*, 33 Md.App. 99, 114, 363 A.2d 657 (1976), although in a factual setting inapposite to the instant case.

suggest strongly, however, that the Court of Appeals either has impliedly adopted the principles outlined in section 324A or would do so expressly given the appropriate case.

The first factor is that the liability principles outlined in section 324A are an application of Justice Cardozo's classic statement that "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276 (1922). That Maryland has long recognized this settled common law rule, now set out in *Restatement (Second) of Torts* § 323 (1965), is not open to serious debate.[10] *See, e.g., Krieger v. J. E. Greiner Co.*, 282 Md. 50, 72–73, 382 A.2d 1069 (1978) (Levine, J., concurring); *Hoover v. Williamson*, 236 Md. 250, 253–54, 203 A.2d 861 (1964); *Pennsylvania R.R. Co. v. Yingling*, 148 Md. 169, 176–77, 129 A. 36 (1925). *Accord, Fischbach & Moore International Corp. v. Crane Barge R–14*, 476 F.Supp. 282, 289–90 (D.Md.1979), *aff'd*, 632 F.2d 1123 (4th Cir. 1980). *See also Arnold's Hofbrau, Inc. v. George Hyman Construction Co., Inc.*, 480 F.2d 1145, 1148 (D.C.Cir.1973) (Winter, J.).

The second factor is that the principles outlined in section 324A, as well as those in section 323, have been applied in several Maryland cases, although the ultimate issue of liability turned on facts particular to the case. *See, e.g., Otis Elevator Co. v. Embert*, 198 Md. 585, 599–602, 84 A.2d 876 (1951); *Cutlip v. Lucky Stores, Inc.*, 22 Md. App. 673, 692–95, 325 A.2d 432 (1974).

The most instructive of these cases is *Krieger v. J. E. Greiner Co.*, 282 Md. 50, 282 A.2d 1069 (1978). In that case, an employee of a subcontractor on a state construction project was injured when struck by a falling steel bar. The bar, held in place by a guy wire rather than a weld, was to be used for reinforcing a concrete column. The plaintiff sued only the project engineers, as the other potential defendants were immune from suit.

The plaintiff alleged that the engineers owed him a duty of care by virtue of their contracts with the State. The plaintiff also alleged that the engineers had assumed a duty of care as to workers on the site because the engineers had stopped the work on prior occasions upon witnessing improper construction methods. 282 Md. at 55–56, 282 A.2d 1069. The trial court sustained the defendants' demurrer, and the plaintiffs appealed.

After reviewing the relevant precedents from other jurisdictions, 282 Md. at 58–66, 282 A.2d 1069, the Court of Appeals held that the engineers' contracts with the state did not create a duty either to act as a safety inspector or to direct the methods of construction. The court stated:

"We have carefully examined each of the contracts in question. We find no provisions in these contracts imposing any duty on the engineers to supervise the methods of construction . . . ."

\*     \*     \*     \*     \*     \*

"We likewise find nothing in the contracts imposing any duty on the engineers to supervise safety in connection with construction.

"The duty of the engineers under their contracts is to assure a certain end result, a completed bridge which complies with the plans and specifications previously prepared by Greiner. It will be observed that many of the cases which have held architects and engineers responsible for safety have done so upon the basis of the construction by the courts of the contracts existing between the engineer or architect and the owner. We hold that a fair interpretation of the contracts be-

---

**10.** As then District Judge Winter explained in *Donohue v. Montgomery Casualty Co.*, 248 F.Supp. 588, 592 (D.Md.1965), *aff'd*, 363 F.2d 442 (4th Cir. 1966), the insurance inspection case of *Zamecki v. Hartford Accident & Indemnity Co.*, 202 Md. 54, 57–60, 95 A.2d 302 (1953), is of limited application due to the unusual allegations in the complaint, and does not sig-

nal an abandonment of the rule stated in *Glanzer*. The "Good Samaritan" rule is recognized by the major commentators. *See, e.g.,* 1 J. Dooley, *Modern Tort Law* §§ 3.40 to 3.42 (1977); 2. F. Harper & F. James, *The Law of Torts* § 18.6 (1956); W. Prosser, *Handbook of the Law of Torts* § 56 (4th ed. 1971).

tween the Commission and Greiner and Zollman is that the duties of those engineers do not include supervision of construction methods or supervision of work for compliance with safety laws and regulations. Hence, the Kriegers may not recover from the engineers under the contracts between the owner and its engineers."

282 Md. at 69, 282 A.2d 1069. *Accord, Coffey v. Derby Steel Co., Inc.*, 291 Md. 241, 256–60, 434 A.2d 564 (1981).

With respect to the plaintiffs' theory based on a duty assumed by conduct, the majority held that the declaration's allegations were insufficiently specific to withstand a demurrer. The plaintiffs were granted, however, leave to amend upon remand. 282 Md. at 69–70, 282 A.2d 1069.

In a concurring opinion, Judge Levine, joined by Judge Eldridge, indicated that the declaration was sufficient to state a claim against the engineers on an assumed duty theory. The rule of law relied on by Judge Levine was the "Good Samaritan" rule. 282 Md. at 70–73, 282 A.2d 1069 (Levine, J., concurring).

Although the Court of Appeals did discuss the policy considerations respecting the imposition of negligence liability on project engineers, *Krieger* is not dispositive as to the parameters of the scope of the "Good Samaritan" rule in Maryland for other classes of defendants. The court in *Krieger* based its decision primarily on its interpretation of the language of the contracts involved, not on general policy grounds. Goldberg, Liability of Architects & Engineers for Construction Site Accidents in Maryland—*Krieger v. J. E. Greiner Co.*: Background and Unanswered Questions, 39 *Md.L.Rev.* 475, 477, 491 (1980). Nevertheless, both the majority and concurring opinions in *Krieger* did acknowledge that the "Good Samaritan" rule remains a part of Maryland tort law. Accordingly,

the court concludes that section 324A of the *Restatement (Second) of Torts* would be applied by the Court of Appeals to impose tort liability for an assumed duty in an appropriate case.

Section 324A requires a plaintiff to allege and to establish initially four elements: duty, breach, causation and injury. In addition, for liability to be imposed under that section, the plaintiff must then produce evidence fulfilling the criteria set out in subsections (a), (b) or (c).

The second and third aspects of Goodyear's second main contention assert, in essence, that the plaintiffs have not alleged an undertaking sufficient to create any duty on its part to use reasonable care for the benefit of the plaintiffs. The court disagrees.

The amended complaint can be read to allege that Goodyear, through conduct and contract, undertook affirmatively to provide Kelly with health and safety information and services relating to the chemicals used at Kelly's Cumberland plant.[11] The amended complaint also alleges the plaintiffs were injured due to Goodyear's acts or omissions in connection with that undertaking.[12] Although the allegations in the amended complaint could be more specific, pleading under the Federal Rules requires only "a short and plain statement of the claim." Rule 8(a)(2), Fed.R.Civ.P. The plaintiffs are not required to plead evidence to support their claim, and it is apparent that Goodyear is apprised of both the basic historical events relevant to the plaintiffs' claim under Count I, as well as the plaintiffs' underlying legal theory.[13] *See* 2A *Moore's Federal Practice* ¶¶ 8.12, 8.13 (2d ed. 1981).

Consequently, Goodyear's reliance on insurance inspection cases from other jurisdictions, such as *Smith v. Allendale Mutual*

---

**11.** Paper No. 72, at ¶¶ 9 & 13.

**12.** Paper No. 72, at ¶¶ 13–23.

**13.** Although outside of the pleadings, there are documents in the record supporting the existence of an express undertaking by Goodyear. *See, e.g.*, Paper No. 84, Exs. 1–6; Affidavit of Ernest R. Spriggs, at ¶ 21, Paper No. 65; Affidavit of John Davies, at ¶¶ 14–15, Paper No. 65.

*Insurance Co.*, 303 N.W.2d 702 (Mich.1981), is misplaced. In that case, employees of the insured alleged that if the insurer had used reasonable care in conducting fire inspections of the insured premises, there would have been no fire and their injuries would have been avoided. The plaintiffs' legal theory was the *Restatement (Second) of Torts* § 324A (1965).

The Supreme Court of Michigan held in *Allendale Mutual* that the insurer was not liable to the plaintiffs under section 324A of the *Second Restatement* because there was *no evidence produced at trial* that the insurer had "undertaken" to perform fire inspections for the insured. In other words, although some fire inspections were made, there was no agreement between the insurer and the insured relating to the making of such inspections. 303 N.W.2d at 709–12. *Accord, Stacey v. Aetna Casualty & Surety Co.*, 484 F.2d 289, 292–294 (5th Cir. 1973) (insufficient evidence at trial of an undertaking).

Also inapposite to the present situation are those cases cited by Goodyear in which the plaintiff contended that an "undertaking" for tort purposes was shown on the part of the federal government simply due to the existence of a statute or a regulation. *See, e.g., United Scottish Insurance Co. v. United States*, 614 F.2d 188 (9th Cir. 1979) (Federal Aviation Administration (FAA) inspection regulations); *Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977) (FAA weight and flight crew regulations); *Taylor v. United States*, 521 F.Supp. 185 (W.D.Ky. 1981) (Federal Coal Mine Health & Safety Act).

### III.

The first aspect of Goodyear's second main contention is, in essence, that the plaintiffs' allegations do not establish a claim for relief under section 324A(b). That is, the plaintiffs have not alleged that Goodyear assumed completely a duty owed to them by Kelly. To this extent, the court agrees with Goodyear that the amended complaint does not state a cognizable claim.

■ Liability under section 324A(b) arises in the workplace setting only if the actor's undertaking was intended to be in lieu of, rather than as a supplement to, the employer's own duty of care to the employees. *See, e.g., Davis v. Liberty Mutual Insurance Co.*, 525 F.2d 1204, 1207–08 (5th Cir. 1976); *Stacey v. Aetna Casualty & Surety Co.*, 484 F.2d at 294; *Blessing v. United States*, 447 F.Supp. 1160, 1193–95 (E.D.Pa. 1978).

For example, in *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 658, 663 (6th Cir.), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979), the Sixth Circuit held that a parent corporation was liable to the employees of a subsidiary injured in a mine accident. Although the court did not cite section 324A, it was found as a fact that the management structure was such that the parent had the "primary" responsibility for the safety program in the mine operated by the subsidiary.

Similarly, in *Hill v. James Walker Memorial Hospital*, 407 F.2d 1036, 1041–42 (4th Cir. 1969), the Fourth Circuit applied section 324A(b) to impose liability on an exterminating company that had, by contract, undertaken to perform certain safety duties imposed by law on the hospital.

■ The plaintiffs in this case have not alleged such a complete assumption by Goodyear. Hence, their claim for relief may not rest on section 324A(b).

When viewed under the standards applicable to a motion to dismiss, however, *e.g., Chertkof v. Mayor & City Council of Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980), the amended complaint does state a claim for relief under either subsection (a) or (c) of section 324A. *See generally Tucker v. Union Oil Co.*, 100 Idaho 590, 595–597, 603 P.2d 156, 162–63 (1979) (noting but not ruling upon the trial court's jury instruction sustainable under section 324A(a) or (c) in the workplace setting).

■ Once the fact and scope of an undertaking is established, liability for breach of the assumed duty may be imposed under section 324A(a) upon proof that the defend-

**1356**

ant's breach resulted in an increased risk of harm to the plaintiff. *See Restatement (Second) of Torts* § 324A, comment c (1965). Similarly, liability may be imposed under section 324A(c) if, for example, Kelly relied upon Goodyear's information and services such that Kelly lessened, or omitted taking, its own safety measures regarding the chemicals as to which information was supplied by Goodyear. *See, e.g., Tillman v. Travelers Indemnity Co.*, 506 F.2d 917, at 921 (5th Cir. 1975); *Hill v. United States Fidelity & Guaranty Co.*, 428 F.2d at 120. *See also Trosclair v. Bechtel Corp.*, 653 F.2d 162, 165 (5th Cir. 1981).

■ Counsel for Goodyear asserted at the hearing on Goodyear's dismissal motion that public policy encourages a parent corporation to share information with a subsidiary, thereby increasing the economic fortunes of both entities. Such is undoubtedly the case. At the same time, however, parent corporations cannot expect to receive the benefits of the corporate veil without subjecting themselves to liability in tort for their own negligent conduct. Consequently, when for economic gain a parent corporation undertakes to render services to a subsidiary, the parent corporation should be regarded as any other information supplying entity and be subject to liability under section 324A, if the plaintiff can produce evidence meeting the requirements of that section. In other words, parent corporations are not entitled, on public policy or other grounds, to an exemption from tort liability when their conduct results in harm to persons as to whom the law recognizes the existence of a duty of care.

In *Arnstein v. Manufacturing Chemists Association*, 414 F.Supp. 12 (E.D.Pa.1976), the representative of a deceased employee brought a wrongful death action against five chemical companies and a nonprofit trade association. The plaintiff alleged that the employee's death from cancer was caused by his long-term exposure to vinyl chloride while employed by the defendant chemical companies. In response to the trade association's motion under Rule 12(b)(6), Judge Fullam stated:

"In its motion to dismiss for failure to state a claim upon which relief can be granted, MCA asserts that it owed no legal duty to plaintiff's decedent, and that, in any event, there is no causal connection between the wrongful conduct charged to MCA and the death of plaintiff's decedent. While subsequent developments in the case may establish that MCA is correct in either or both of these contentions, I do not believe the issues can properly be determined on a motion to dismiss. Construing the pleadings in plaintiff's favor, the Complaint can properly be interpreted as asserting a cause of action under § 324[A] of the *Restatement of Torts 2d*."

\* \* \* \* \* \*

"On the basis of the pleadings, I am satisfied that plaintiff should not be precluded from attempting to prove a case under that section, or under the closely-related § 323. If, as the case progresses, it becomes apparent that there is no genuine issue of material fact, MCA may renew its request for pretrial relief by way of a motion for summary judgment; but I believe it would be premature to attempt to resolve these issues at the pleading stage."

414 F.Supp. at 14–15 (quotation omitted).

Despite Goodyear's protests that the amended complaint does not allege facts supporting either the existence of an undertaking or causation, the court concludes that the plaintiffs' allegations are sufficient to state a claim for relief under the *Restatement (Second) of Torts* § 324A(a) & (c) (1965). Thus, for all of the reasons set out above, Goodyear's motion to dismiss that aspect of Count I premised on a breach by Goodyear of an undertaking will be denied.

**IV.**

Goodyear next contends that Counts III and IV of the amended complaint, which premise liability on the alleged existence at the Cumberland plant of an abnormally dangerous condition, must be dismissed. *See Restatement (Second) of Torts* §§ 519

& 520 (1977). The reasons advanced by Goodyear are three-fold: (1) Goodyear is not the owner of the premises; (2) the plaintiffs have not identified the alleged abnormally dangerous condition; and (3) these counts are simply duplicative of the plaintiffs' strict product liability claims in Counts V and VI.

█ It is unclear under Maryland law whether a defendant must own the subject premises in order to be held liable for an abnormally dangerous condition existing on those premises. *Compare Rockland Bleach & Dye Works Co., Inc. v. H. J. Williams Corp.*, 242 Md. 375, 386–87, 219 A.2d 48 (1966) *with Toy v. Atlantic Gulf & Pacific Co.*, 176 Md. 197, 212–14, 4 A.2d 757 (1939). Although ownership of the premises is not required for the imposition of liability under the *Restatement (Second) of Torts* § 520, comment e (1977), it is apparent that the party to be held liable under such a theory must have at least the right or a duty to control, if not actual control over, the activity causing the harm. *See generally* 2 F. Harper & F. James, *The Law of Torts* §§ 14.1 to 14.5 (1956); W. Prosser, *Handbook of the Law of Torts* § 78 (4th ed. 1971).

Although Goodyear is alleged to own the land on which Kelly's Cumberland plant is located,[14] it is Kelly which is alleged to have maintained and operated the plant on a day-to-day basis.[15]

*Restatement (Second) of Torts* § 519 (1977) provides:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

"(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

There are no allegations in the amended complaint indicating that it is Goodyear "who carries on" any activities at the Cumberland plant. Because the plaintiffs have disclaimed any attempt to pierce Kelly's corporate veil, Kelly's activities at the plant cannot be attributed to Goodyear. While the amended complaint does allege that Goodyear supplied chemicals and safety information to Kelly for use at the Cumberland plant, the amended complaint does not allege that Goodyear does anything, or is directly responsible for anything done, at the Cumberland plant. Further, there are no allegations to the effect that Goodyear has a right to control Kelly's actual use of the chemicals and information provided, or that Goodyear has a duty to control Kelly's conduct with respect to the chemicals and related information.[16]

█ Thus, even assuming that the chemicals and the use of safety information relating thereto could constitute an abnormally dangerous condition under *Restatement (Second) of Torts* § 520 (1977),[17] Counts III and IV of the amended complaint do not state a claim under *Restatement (Second) of Torts* § 519 (1977). Consequently, these counts will be dismissed. Should the plaintiffs determine that a cognizable claim can be stated against Goodyear, they may, of course, avail themselves of Rule 15(a), Fed.R.Civ.P.

### V.

Goodyear's final contentions under Rule 12(b)(6) concern Counts IX and X, which

---

14. Paper No. 72, at ¶ 29. Subsequent to the preparation of this opinion, counsel for the plaintiffs notified the court by telephone that Kelly, not Goodyear, owned the subject premises. In light of this, counsel for the plaintiffs indicated that Counts III and IV would be dropped from the amended complaint. The court has not yet received, however, any formal pleading to that effect.

15. Paper No. 72, at ¶ 8.

16. The right or duty to control activities on the premises is to be distinguished from Goodyear's duty, as alleged in Counts I and II, to provide warnings as to the chemicals' dangers, and to use reasonable care in supplying safety information.

17. *Compare Restatement (Second) of Torts* § 402A (1965) (strict product liability). *See generally Phipps v. General Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976).

purport to state claims for deceit and concealment.[18] According to Goodyear, these counts should be dismissed because: (1) the plaintiffs' allegations lack the requisite specificity; and (2) the acts or omissions complained of are attributable to Kelly, not to Goodyear.

■ In a diversity case, the *elements* of fraud that must be alleged in the complaint in order to state a cognizable claim are determined by reference to state law. 2A *Moore's Federal Practice* ¶ 9.03 at 9–18 (2d ed. 1981). The degree of specificity required with respect to those elements, however, is a matter of federal procedure. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1203 (1969). *See Swift & Co. v. Young*, 107 F.2d 170, 172 (4th Cir. 1939). In other words, while this court must look to Maryland substantive law in determining whether Counts IX and X of the amended complaint state "a 'cause of action' in the sense that [they] must show 'that the pleader is entitled to relief,' " 2A *Moore's Federal Practice* ¶ 8.13 at 8–117 (2d ed. 1981), the federal rules, in this instance Rule 9(b), govern the determination of whether a fraud claim is stated with sufficient particularity. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 68 (1980 Supp.). *See Consumers Time Credit, Inc. v. Remark Corp.*, 227 F.Supp. 263, 266 (E.D. Pa.1964) (Kraft, J.).

■ The counts at issue set out either expressly, or by fair implication, *Parish v. Maryland & Virginia Milk Producers Ass'n, Inc.*, 250 Md. 24, 72–73, 242 A.2d 512 (1968), *appeal after remand*, 261 Md. 618, 277 A.2d 19, *cert. denied*, 404 U.S. 940, 92

S.Ct. 280, 30 L.Ed.2d 253 (1971), all of the five elements required under Maryland law to state a claim for deceit, or "affirmative" fraud. *See, e.g., James v. Weisheit*, 279 Md. 41, 44, 367 A.2d 482 (1977); *James v. Goldberg*, 256 Md. 520, 528–29, 261 A.2d 753 (1970). Further, the allegations in Counts IX and X also state a claim for concealment, or "negative" fraud. Goodyear's duty to speak arises out of the allegations that are the subject of Counts I and II. *E.g., Leonard v. Sav-A-Stop Services, Inc.*, 289 Md. 204, 217, 424 A.2d 336 (1981), *citing Moran v. Faberge, Inc.*, 273 Md. 538, 332 A.2d 11 (1975). The other required elements, the (1) intentional suppression of (2) a material fact with (3) the object of creating or continuing a false impression, are also present. *See, e.g., Levin v. Singer*, 227 Md. 47, 64, 175 A.2d 423 (1961); *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223 (1958).

The factors to be considered in assessing the sufficiency of a complaint under Rule 9(b) have been examined thoroughly by the courts in this [19] and other circuits.[20] Such a discussion need not be repeated here because it is apparent that the plaintiffs' allegations in Counts IX and X are sufficiently specific under Rule 9(b). Whether the acts or omissions complained of are properly attributable to Kelly, rather than to Goodyear, cannot be resolved on a motion under Rule 12(b)(6).

## VI.

In order to grant Goodyear's Rule 12(b)(7) motion the court must find: (1)

---

**18.** That the plaintiffs have labeled these counts as claims for "fraud, concealment and misrepresentation" is of no consequence. As will be seen, Maryland recognizes only two forms of intentional misrepresentation, deceit and concealment. The court does not read Counts IX and X as purporting to state claims for negligent misrepresentation. *See Leonard v. Sav-A-Stop Services, Inc.*, 289 Md. 204, 213 & n. 7, 424 A.2d 336 (1981).

**19.** *See, e.g., Fulk v. Bagley*, 88 F.R.D. 153, 164–65 (M.D.N.C.1980); *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 865–66 (E.D.Va.1980); *Gilbert v. Bagley*, 492

F.Supp. 714, 725–26 (M.D.N.C.1980); *Oliver v. Bostetter*, 426 F.Supp. 1082, 1088–89 (D.Md. 1977).

**20.** *See, e.g., Credit & Finance Corp. Ltd. v. Warner & Swasey Co.*, 638 F.2d 563, 566 (2d Cir. 1981); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228–29 (1st Cir. 1980); *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975); *In re Commonwealth Oil/Tesoro Petroleum Corp. Securities Litigation*, 467 F.Supp. 227, 250–51 (W.D.Tex.1979); *Temple v. Haft*, 73 F.R.D. 49, 52–53 (D.Del.1976); *duPont v. Wyly*, 61 F.R.D. 615, 630–31 (D.Del.1973).

that under Rule 19(a) Kelly should be joined as a party defendant; and (2) that under the "equity and good conscience" test of Rule 19(b) this action cannot proceed if Kelly is not so joined. The general analysis to be employed under Rule 19 was outlined by the Supreme Court in *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). *See Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 85–86 (4th Cir. 1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). Each case, however, must be decided on its own particular facts.

Under Rule 19(a), a person will be considered conditionally necessary if:

"(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

▪ The inquiry contemplated by Rule 19(a) is a practical one, and is addressed to the sound discretion of the court. *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980). *See* 3A *Moore's Federal Practice* ¶ 19.07–1 (2d ed. 1979); 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1604 (1972). If, after the application of the criteria set out in Rule 19(a), an absent person is determined to be conditionally necessary, but his joinder would destroy complete diversity, the court must consider the factors enumerated in Rule 19(b). *See Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d at 85–86; *Hill v. Liberty Mutual Insurance Co.*, 453 F.Supp. 1342, 1345 n.1 (E.D.Va. 1978).

Goodyear contends that Kelly is a conditionally necessary party under Rule 19(a)(1), as to the counts subject to its Rule 12(b)(6) motion, on the ground that Kelly alone is liable for the acts or omissions complained of. *See Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 836 & n.7 (D.Del.1978). As discussed above, however, the plaintiffs seek to impose tort liability only on Goodyear and only for Goodyear's independent acts and omissions, not derivatively through Kelly.

▪ The "complete" relief concept of Rule 19(a)(1) "refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." 3A *Moore's Federal Practice* ¶ 19.07–1[1] at 9–128 (2d ed. 1979). *See Dyke v. Gulf Oil Corp.*, 601 F.2d 557, 566 & n. 20 (TECA 1979). The plaintiffs can obtain complete relief in this case because no judgment is sought against Kelly, or against Goodyear for an act or omission of Kelly. Thus, Kelly's absence as a party defendant would not impair any relief that could be granted to the plaintiffs should they prevail on the merits of their claims. *See Dernick v. Bralorne Resources, Ltd.*, 639 F.2d 196, 199 (5th Cir. 1981); *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1245–46 (E.D.Va.1977).

Goodyear has not identified how a judgment in this case would impair its interest in complete relief. If Goodyear prevails, *res judicata* would bar any further proceedings against it by the plaintiffs. Even if a judgment is entered against Goodyear there is no indication that its right to indemnity or contribution from Kelly, if any, would be diminished.[21] Further, Goodyear has not shown that it would be unable to adequately defend itself in this consolidated litigation if Kelly were not joined.

Kelly is not conditionally necessary under Rule 19(a)(2) because Kelly has stated that it has no interest in the subject matter of

**21.** Assuming that Goodyear and Kelly may be classified as joint tortfeasors, it is settled that Kelly's joinder is not *per se* required under Rule 19. *See Debbis v. Hertz Corp.*, 269 F.Supp. 671, 683–84 & n. 20 (D.Md.1967); 3A *Moore's Federal Practice* ¶ 19.07–1[2.2] at 19–148 to 19–149 (2d ed. 1979).

this litigation.[22]  The mere fact that Goodyear and Kelly have a parent-subsidiary relationship does not make Kelly conditionally necessary.  *See Gertner v. Hospital Affiliates International, Inc.,* 602 F.2d 685, 688–89 (5th Cir. 1979).

For the reasons set out above, the court concludes that Kelly is not conditionally necessary within the meaning of Rule 19(a).  Thus, the court need not address the factors enumerated in Rule 19(b).  Goodyear's motion under Rule 12(b)(7) will be denied.

Accordingly, it is this 25th day of February, 1982, by the United States District Court for the District of Maryland, ORDERED:

1.  Goodyear's motion to dismiss the plaintiffs' amended complaint under Rule 12(b)(6) is GRANTED as to Counts III and IV, and is DENIED in all other respects, it being the court's interpretation that Counts I and II do not state a claim under *Restatement of Torts (Second)* § 324A(b).

2.  Goodyear's motion to dismiss the plaintiffs' amended complaint under Rule 12(b)(7) is DENIED.

See also, D.C., 93 F.R.D. 558.

---

**22.**  Kelly has disclaimed any interest in this litigation.  Paper No. 66.  In any event, it appears that the plaintiffs' only remedy against Kelly lies under the Maryland Workmen's Compensation Act, *Md.Code Ann.* art. 101, § 15 (1979 & 1981 Cum.Supp.).  *See, e.g., Knoche v. Cox,* 282 Md. 447, 385 A.2d 1179 (1978).