Rose Julia ARNSTEIN, Administratrix of the Estate of Reinhold Ralph Arnstein, Deceased

v.

MANUFACTURING CHEMISTS ASSOCIATION, INC., et al.

Civ. A. No. 74–3323.

United States District Court, E. D. Pennsylvania.

Jan. 30, 1976.

Zygmont A. Pines, Philadelphia, Pa., for plaintiff.

Alan J. Davis, David M. Doret, Wolf, Block, Schorr, Solis-Cohen, Philadelphia, Pa., for Mfg. Chemists Assn.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

Plaintiff brings this action to recover damages under the wrongful death and survival statutes of Pennsylvania for the death of Reinhold Arnstein. Plaintiff's decedent died December 31, 1973, of cancer, allegedly caused by his long-term exposure to excessive amounts of vinyl chloride, over many years of employment by various chemical companies. Named as defendants in the action are five chemical companies which employed the decedent at various times between 1956 and 1964, and between 1969 and 1972, and Manufacturing Chemists Association (hereinafter "MCA"), a non-profit trade association.

MCA now seeks dismissal of this action for lack of jurisdiction, and alternatively moves to dismiss the Complaint for failure to state a claim against MCA. The record discloses that MCA is a New York corporation having its offices in Washington, D. C. It has no office or other place of business in Pennsylvania. Its sole "contacts" with Pennsylvania are as follows: (1) Approximately 10 percent of its members (all of which are corporations which manufacture chemicals) are citizens of Pennsylvania; (2) these Pennsylvania members pay dues totaling approximately $200,000 annually; (3) various Pennsylvanians employed by member companies participate in the activities of MCA and its Standing Committees; (4) in a vaguely-described recent period of from one to two years ("since 1974") approximately four meetings of MCA committees have been held in Pennsylvania; (5) MCA communicates with its Pennsylvania members regarding MCA affairs; and (6) Pennsylvanians, both members and non-members, have received various MCA publications in Pennsylvania. (MCA does not solicit sales of its publications, but responds to requests for such publications virtually always on a prepaid basis. Requests for publications are accepted, processed, and filled by mail from the Washington office.)

Federal Rule of Civil Procedure 4(e) permits service of process in accordance with ". . . a statute or rule of court of the state in which the district court is held . . .". The applicable Pennsylvania statute is 42 Purdon's Statutes Annotated § 8301 et seq. Section 8302 of that statute authorizes service upon the Pennsylvania Department of State with respect to "any foreign corporation which shall have done any business in this Commonwealth without procuring a certificate of authority to do so . . . in any action arising within this Commonwealth."

Section 8309 contains extremely broad definitions of "doing business" including "the doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object;" and Subsection b of that section provides that, in addition, "the jurisdiction and venue of courts in this Commonwealth shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States . . .".

In the present case, there is no claim that the decedent was ever exposed to vinyl chloride in the Commonwealth of Pennsylvania, or that any action of MCA within the Commonwealth of Pennsylvania gave rise to plaintiff's cause of action. The most that can be gleaned from plaintiff's Complaint is a charge that plaintiff's decedent was a resident of Pennsylvania from July 1972 until his death on December 31, 1973, and that during that period MCA failed to disclose to him (or anyone else, including its own members) certain information then possessed by MCA concerning the dangers of exposure to vinyl chloride.

█ Thus, in the absence of controlling authority to the contrary, it would be possible to interpret the "in any action arising within the Commonwealth" language of § 8302 as inapplicable to the present case, since it seems reasonably clear that plaintiff's cause of action did not arise within the Commonwealth of Pennsylvania. However, in Siders v. Upper Mississippi Towing Corp., 423 F.2d 535 (3d Cir. 1970), the Court construed the quoted language as referring to any suit filed in Pennsylvania, regardless

of where the cause of action arose. While this interpretation has not been universally acclaimed, see Sell, *Annual Survey of Pennsylvania Legal Developments—Corporations*, 46 Pa.Bar Quarterly 300, 311–12 (June 1975), it is controlling in this case. The only remaining question, therefore, is whether MCA can properly be regarded as "doing business" in Pennsylvania within the meaning of the statute and, if so, whether an affirmative answer would be constitutionally permissible.

Cases involving the activities of trade associations and similar entities in this context are not numerous, and, since they arise under differing statutory provisions, provide no sure guidance. MCA relies upon such cases as *Sawyer v. Soaring Society of America, Inc.*, 180 F.Supp. 209 (S.D.N.Y. 1960); *Friends of Animals, Inc. v. American Veterinary Medical Assn.*, 310 F.Supp. 620 (S.D.N.Y.1970); and *Wentling v. Popular Science Publishing Co.*, 176 F.Supp. 652 (M.D.Pa.1959). The plaintiff argues that these cases are irrelevant, since they involve questions of venue under the antitrust laws. Defendant counters with the argument that the "substantial" test of antitrust venue is analogous to the "continuous and substantial" test of *Bork v. Mills*, 458 Pa. 228, 329 A.2d 247 (1974). In my view, the cited cases are relevant, but lend little support to MCA's argument, in view of the peculiar characteristics of MCA and similar trade associations.

■ MCA sponsors research in areas of importance to chemical manufacturing "such as air and water pollution controls, and a special research program in reference to synthetic resins" (Exhibit P–3 attached to plaintiff's answer to MCA's motion); conducts committee studies, workshops and technical symposia; develops recommended procedures for packaging and handling of chemicals; promotes plant safety through incentive programs of annual awards; and furnishes educational materials for high school and college chemistry courses. MCA publishes statistical handbooks, manuals of recommended practice, safety data sheets and guides, etc. Given the emphasis upon education and standard-setting, it is reasonable to conclude that the conduct of symposia and committee studies is an important part of MCA's "business." In this context, the holding of four such meetings in Pennsylvania within a fairly limited period looms in importance in demonstrating continuous and substantial contacts with Pennsylvania.

Moreover, when the nature of MCA's membership is taken into account, the fact that 10 percent of its members are citizens of Pennsylvania is also significant. Unlike a business conducted for profit, and to a greater degree than most non-profit enterprises and professional associations, MCA's "business" was with its members. In a sense, its members were its "customers."

It is clear that MCA has, on more than one occasion, performed an act within the Commonwealth of Pennsylvania for the purpose of attaining an object. While the issue is perhaps not free from doubt, I have concluded that the contacts discussed above are sufficient to preclude a determination that subjecting MCA to *in personam* jurisdiction in Pennsylvania would violate due process. The motion to dismiss for lack of personal jurisdiction will therefore be denied.

■ In its motion to dismiss for failure to state a claim upon which relief can be granted, MCA asserts that it owed no legal duty to plaintiff's decedent, and that, in any event, there is no causal connection between the wrongful conduct charged to MCA and the death of plaintiff's decedent. While subsequent developments in the case may establish that MCA is correct in either or both of these contentions, I do not believe the issues can properly be determined on a motion to dismiss. Construing the pleadings in plaintiff's favor, the Complaint can properly be interpreted as asserting a cause of action under § 324 of the Restatement of Torts 2d, which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting

from his failure to exercise reasonable care to [perform] his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

On the basis of the pleadings, I am satisfied that plaintiff should not be precluded from attempting to prove a case under that section, or under the closely-related § 323. If, as the case progresses, it becomes apparent that there is no genuine issue of material fact, MCA may renew its request for pretrial relief by way of a motion for summary judgment; but I believe it would be premature to attempt to resolve these issues at the pleading stage.

For all of the foregoing reasons, MCA's Motion to Dismiss will be denied.